**Randall J. MARLOWE, Appellant**

v.

**ARGENTINE NAVAL COMMISSION.**

No. 85–5824.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 14, 1986.
Decided Dec. 30, 1986.

See also, D.C., 604 F.Supp. 703.

Robert R. Smiley, III, with whom Nicholas Gilman, Charleston, S.C., was on the brief for appellant.

Bruno A. Ristau, Washington, D.C., for appellee.

Before ROBINSON and BORK, Judges, and WRIGHT, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

Plaintiff Randall Marlowe brings this diversity action for breach of contract against the Argentine Naval Commission. Following a bench trial, the district court granted judgment for the defendant. We affirm.

## I.

In 1982, plaintiff and defendant negotiated and signed a written contract, which provided that plaintiff would arrange for defendant to buy two planes for $1.5 million each from Servistan, a Panamanian corporation. The contract was executed in Washington, D.C. on September 27, 1982, and specified that its terms were governed by the laws of the District of Columbia. To cover the purchase price of the planes, the contract required defendant to open a letter of credit in favor of Servistan that would be confirmed by the Banco Nacional de Panama, though the contract did not specify a time limit within which the letter of credit was required to be either opened or confirmed. In addition, the contract required Servistan to deliver the planes no later than thirty days after the contract was signed by both parties and the letter of credit was opened by defendant. "Delivery" of the planes comprised the transfer of good and marketable legal title to two planes in an "airworthy" condition, with defendant being given an opportunity to inspect them before granting its final acceptance. *See* Contract, Record Excerpts ("R.E.") at 29–39.

On October 18, 1982, Riggs National Bank in Washington opened two letters of credit for defendant that were due to expire on November 30, 1982. The letters, however, were not confirmed at this time, in part because defendant had not yet designated an authorized representative to carry out its side of the transaction. During the month of November, defendant instructed the bank to make several specific changes in the letters of credit, involving the serial number of one of the planes and the place where the planes were to be delivered. The expiration date on the letters was also extended until January 31, 1983. Defendant still failed to designate its authorized representative, however, and it was not until December 1, 1982, that this omission was repaired and the letters were finally confirmed.

In the meantime, plaintiff made an attempt to deliver the planes on November 19, 1982. The attempt failed for several reasons. Plaintiff alleges that the failure to confirm the letters of credit prevented delivery from being made on that day; defendant claims that plaintiff lacked legal title to the planes, that ground inspection of them was not yet complete, and that plaintiff could not warrant that they would be delivered in an airworthy condition. After this attempt failed and the letters of credit had been confirmed, tentative delivery dates were scheduled first for December 3, 1982, then for December 7, then for December 10, and again for December 13. On each occasion, the delivery dates had to be postponed because plaintiff failed to obtain authorization to sell the planes. On December 30, 1982, defendant sent a telex to plaintiff's office advising him that the contract would expire the next day, though plaintiff claims he never received the telex. Defendant finally canceled the contract on January 6, 1983. Plaintiff rejected the cancellation, but it appears that no planes were ever delivered or accepted. Plaintiff then brought this suit claiming breach of contract.

## II.

Under the terms of the parties' contract, this case is governed by District of Columbia law. The contract was one for the sale of goods, which means that the case falls under the Uniform Commercial Code, as it has been adapted in local statutes. *See* D.C. Code Ann. §§ 28:1–101 to :2–725 (1981 & Supp.1986). Plaintiff raises a number of arguments that we examine in turn.

■ The first issue is whether defendant breached an implicit obligation to confirm the letters of credit within a reasonable time, the letters having been opened on October 19, 1982, but not confirmed until December 1, 1982. The trial court focused on two points. First, it noted that the contract did not specify any deadline for defendant to meet in establishing the letters of credit. On this point, the court then made a general finding that defendant's actions with respect to the letters were reasonable. *Marlowe v. Argentine Naval Comm'n*, No. 84–1870, mem. op. at 15 (D.D.C. July 10, 1985). Second, the court found any delay in confirmation was "reasonable" because the only effect of the delay was to provide plaintiff with more time in which to prepare to tender the aircraft. *Id.* at 13–14. Thus the delay did not prejudice the plaintiff. We believe these conclusions are correct and dispositive of this issue.

■ Plaintiff also contends that the district court erred in finding that the 30–day delivery period commenced on December 1, 1982, when the letters of credit were confirmed rather than when they were opened. Yet the same reasoning applies here. The letters were opened on October 19, 1982, so under plaintiff's interpretation the 30–day delivery period would have expired on November 18, 1982. Instead, the trial court found that the delivery period expired on December 31, 1982. If that was error, it was not detrimental to plaintiff.[1]

Plaintiff's argument would be persuasive if he could show that the delay in confirming the letters of credit had blocked the consummation of the contract. Plaintiff did attempt to deliver two planes on November 19, 1982, and he alleges that delivery was thwarted solely because the letters had not been confirmed. The trial court found, however, that the attempted delivery was insufficient because the ground inspection of the aircraft was not yet complete and plaintiff could not furnish necessary documentation nor warrant that the aircraft would be delivered in an "airworthy condition" as required by the contract.

---

1. At first glance, it seems somewhat odd that when the contract said "opened," and the meaning of that term was obvious in this case, the lower court would read "confirmed." But the court provides a sensible explanation in pointing out that not only did the parties seem to agree on this point in some of their submissions, but also it would be troublesome to both parties if delivery would have to be made *before* the letters of credit were confirmed, at a time when the method and likelihood of payment remained in doubt. *Marlowe*, mem. op. at 13. The more important point, however, is the one made above—that any error in thus "reinterpreting" the contract was favorable and not detrimental to plaintiff.

*Marlowe,* mem. op. at 14 & n. 3. These findings of fact are not clearly erroneous, must be upheld on review, and compel rejection of plaintiff's argument.

Plaintiff raises the further contention that the parties modified their contract by oral agreement to extend the permissible time of delivery to January 31, 1983, and claims that the agreement was confirmed in writing in the documents extending the letters of credit. Plaintiff specifically claims that the parties attempted to modify the contract both orally and in writing. Brief of Appellant at 27, 34. Here plaintiffs advance three arguments, all of which fail.

■ The first argument is that the oral agreement itself modified the contract. The D.C. Code, however, states that a "signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded." D.C. Code Ann. § 28:2–209(2) (1981). This contract permitted modification only by written agreement. Contract ¶ 10–C, R.E. at 37.

■ Plaintiff argues, second, that the oral agreement constituted a waiver of the 30–day limit on delivery specified in the contract. Although under local law the attempt to modify or rescind the contract was ineffective as such, the attempt may be construed instead as a waiver. D.C. Code Ann. § 28:2–209(4) (1981). On this point, however, the contract was quite specific, explicitly precluding any oral waiver of its terms. Contract ¶ 10–C, R.E. at 37.

■ It is argued, finally, that the modification or waiver was not simply made orally but was memorialized in writing. Plaintiff points to two documents as having this effect—defendant's correspondence with the bank extending the expiration date on the letters of credit to January 31, 1983, and defendant's internal memorandum that authorized the extension. Brief of Appellant at 34. The problem is that neither document purports to modify the contract. Neither says anything about extending the time within which plaintiff could make delivery; each speaks only to the dates during which the letters of credit are to remain valid. Plaintiff relies on language in the internal memorandum referring to the letters of credit as "corresponding to the purchase orders for the two aircraft," R.E. at 42, 44, but this language merely served to identify the letters of credit that were affected, and it does not appear in the correspondence with the bank, which refers to the letters of credit more succinctly by number. *Id.* at 41, 43. No modification of the contract can be culled from these documents.

■ At oral argument, plaintiff clarified his position further, contending that these documents need not themselves explicitly modify the contract in order to constitute a valid written modification; it is enough if they memorialize in writing what would otherwise be a purely oral (and hence invalid) modification, by providing sufficient written evidence that an earlier oral modification was undertaken and accepted by both parties. This argument again fails, for essentially the same reasons mentioned before. First, the letters of credit and internal memorandum refer only to extension of the letters of credit; they never refer to or assume any particular extension—or any extension whatsoever—of the duration of the contract. Second, whether or not this argument may be compatible with the language of D.C. Code § 28:2–209(2), it is inconsistent with paragraph 10–C of the contract, which strictly required any such modification to be made "*by* an instrument in writing," R.E. at 37 (emphasis added), and not merely memorialized by such a writing.

The most troublesome aspect of this conclusion—that the 30–day delivery period was never waived by defendant—lies in plaintiff's allegation that both parties made a practice of accepting certain specific modifications of their contract by oral agreement. Plaintiff claims that the parties, by oral agreement, had added a new requirement for pre-delivery inspection, had changed the identity of one plane, and had changed the place of delivery. Brief of Appellant at 27. Conceding for the moment that paragraph 10–C of the contract barred both oral modifications of the agreement and oral waiver of its terms, plain-

tiff's argument here might be that the practice of making oral modifications to the contract acted as a complete waiver of the no-oral-modifications clause. Thus, plaintiff would argue that if performance had been properly tendered, and all of these new terms had been complied with, defendant would not have been able to claim breach of the written agreement.

■ Plaintiff's argument thus runs up against D.C. Code Ann. § 28:2–208(2) (1981), which states that "[t]he express terms of the agreement and any ... course of performance ... shall be construed as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance." If there were a course of performance in this case—if plaintiff had performed according to the oral modifications and defendant had accepted that performance over a course of time, and then defendant had reversed its field and sought to have all of plaintiff's performances declared in breach of contract—it would seem harsh to read this language so strictly as to preclude waiver.[2] But here no performance had actually occurred on any of these terms, and therefore no course of performance had arisen under the contract. Plaintiff made no performance; defendant never had any performance to accept; no course of performance was established. Here at best there was a course of dealing, which is not only of weaker effect than a course of performance, see D.C. Code Ann. §§ 28:2–208(2), 28:1–205 (1981), but does not create the same strong equities as actual performance and repeated acceptance over a period of time. Cf. D.C. Code Ann. § 28:2–208(3) (1981) (mentioning course of performance, but not course of dealing, as relevant to show waiver). Thus, there was no blanket

waiver here of paragraph 10–C, and plaintiff's arguments for oral modifications again must fail.

■ In sum, the 30–day delivery period remained in effect and closed on December 31, 1982. When no delivery was made, defendant canceled the contract on January 6, 1983. This raises the final question of whether defendant's cancellation at that time was improper or in any way inconsistent with its obligations under the contract. We would hardly assert that this sequence of events was as clear to the parties at the time as we may have made it seem in retrospect; indeed, the whole situation had become quite murky. Nonetheless, under the law the defendant was wholly within its rights to cancel when it did. Courts typically hold that time is of the essence in contracts for the sale of goods, see, e.g., *Norrington v. Wright*, 115 U.S. 188, 203, 6 S.Ct. 12, 14, 29 L.Ed. 366 (1885) ("In the contracts of merchants, time is of the essence."), and local District of Columbia law follows the Uniform Commercial Code in generally adopting the "perfect tender" rule, see D.C. Code Ann. § 28:2–601 (1981), which the Code has tempered in several specific respects but not in this one.[3]

■ Plaintiff has one further objection to the application of this time limit. Under D.C. Code Ann. § 28:2–508 (1981), a party that tenders performance in a defective manner must be given an opportunity to cure that deficiency within the period of the contract; if the non-conforming party had "reasonable grounds to believe" that the defective performance would be accepted, it may even be given a reasonable additional time in which to cure the deficiency. The sole non-conforming tender of performance by plaintiff came on November 19, 1983, long before the period of the

---

**2.** Even when a waiver of express language based on course of performance can be found with respect to terms for which oral modification was attempted, however, the waiver probably should extend only to those specific terms. *Cf. Double-E Sportswear Corp. v. Girard Trust Bank*, 488 F.2d 292, 298 (3d Cir.1973) (Garth, J., concurring) ("the 'waiver' to which § 2–209(4) refers is a waiver limited to the particular condition, term or portion of the written contract sought to be waived by a party entitled to waive

it. It does not constitute nor operate as a wholesale waiver...."). *But cf. Westinghouse Credit Corp. v. Shelton*, 645 F.2d 869, 874 (10th Cir.1981) (whether a course of performance amounted to waiver of an "anti-waiver" clause itself depends on whether the conduct was "so pervasive" as to excise the language).

**3.** Moreover, in *Siegel v. Banker*, 486 A.2d 1163 (D.C.App.1984), a case that is tangential here because it involved the sale of a condominium, and thus did not arise under the Uniform Com-

contract expired on December 31, 1983. Plaintiff had ample time—longer even than the expected 30-day period of the contract itself—in which to cure those deficiencies without any further extension of time. Plaintiff's failure to make delivery on any other occasion within the time limits of the contract is hardly the kind of "event" that would earn plaintiff an opportunity to "cure" his non-performance.

For these reasons, plaintiff's claims must be rejected and the trial court's decision is

*Affirmed.*

mercial Code, the court held that under local contract law timely performance is essential to the terms of a purchase-and-sale agreement whenever the force of the contract is expressly conditioned on the fulfillment of its terms within a specified period, *see id.* at 1165–66, as is true in this case.