**FARM EQUIPMENT STORE, INC., Appellant–Plaintiff,**

v.

**WHITE FARM EQUIPMENT COMPANY, A DIVISION OF ALLIED PRODUCTS CORPORATION, Appellee–Defendant.**

No. 63A05–9201–CV–00040.

Court of Appeals of Indiana, Third District.

July 28, 1992.

Joseph L. Verkamp, Verkamp & McConnell, Jasper, for appellant-plaintiff.

Donald E. Knebel, Stanley C. Fickle, Dwight D. Lueck, Barnes & Thornburg, Indianapolis, for appellee-defendant.

HOFFMAN, Judge.

Appellant-plaintiff Farm Equipment Store, Inc. appeals the grant of partial summary judgment to White Farm Equipment Company.

One issue is dispositive of this appeal: whether Allied modified the dealership contract.

The facts relevant to this appeal disclose that Allied Products Corporation (Allied) manufactures farm machinery through its division White–New Idea Farm Equipment Company. It distributes these products through dealers. Farm Equipment Store, Inc. (Farm Equipment) executed a dealer agreement with Allied in February of 1986 and was an Allied dealer until June of 1988.

Before serving as a dealer for Allied, Farm Equipment was a dealer for White Farm Equipment Company (White Farm), a Delaware corporation which declared bankruptcy in 1985. In late 1985, Allied acquired certain assets from White Farm in the bankruptcy proceeding, including the White line of tractors and field implements and the right to market those lines through a division of Allied. Allied acquired these White Farm assets from the bankruptcy estate free of any obligations White Farm had to its dealers.

After acquiring the White Farm assets, Allied entered into new dealership agreements with certain of White Farm's former dealers. Allied and Farm Equipment signed a dealer agreement in 1986. On June 14, 1988, Allied sent a letter to Farm

Equipment terminating the dealer agreement without notice. After termination, Farm Equipment returned approximately $40,000.00 in repair parts it had purchased from Allied. Farm Equipment also sought to return additional parts which it had not purchased from Allied. Farm Equipment valued these parts at approximately $210,000.00. Allied refused to accept the return of these parts.

On August 24, 1988, Farm Equipment filed suit against Allied alleging four claims. None of these claims are a part of this appeal. On March 13, 1991, Farm Equipment filed an amended complaint alleging that the dealership agreement had been modified "through a course of dealing" to require that Allied "accept return of repair parts purchased by [Farm Equipment] from [Allied's] predecessors in title and interest."

Allied requested summary judgment. After a hearing, the trial court granted partial summary judgment to Allied. Farm Equipment appeals the trial court's finding that there was no modification of the written dealership agreement as to the return of parts upon termination.

■■■ Review of a summary judgment requires an appellate court to employ the same standard as the trial court by determining whether a genuine issue of material fact exists, and any doubt in this regard must be resolved in favor of the non-moving party. *Lee v. Schroeder* (1988), Ind. App., 529 N.E.2d 349, 352. Summary judgment is proper when conflicting facts and inferences exist as to some elements of a claim if there is no dispute as to facts which are dispositive of the matter. *Id.*

Since the contract was one for the sale of goods, it is governed by the Uniform Commercial Code (U.C.C.), as it has been adopted in Indiana, IND.CODE § 26–1–2–101, *et seq.* (1988 Ed.).

The parties entered into the dealership contract in 1986. Attached to the contract was a schedule of terms and discounts. This schedule was deemed incorporated into the contract under the contract provisions.

In the schedule of terms and discounts, a provision for annual returns was provided: "Annual Returns—During the time the Dealer's Sales Contract is in effect, the Dealer [Farm Equipment] may return repair parts for credit subject to the following provisions:
1. The return privilege shall be limited to an amount not to exceed 10% of the Dealer's stock order purchase of repair parts at billing net prices during the previous twelve month period ending October 31st.
2. Repair parts eligible for return will be those parts purchased from the Company [Allied] and which are included in the Company's current Returnable Parts List[.]

\*    \*    \*    \*    \*    \*

At the request of the Company, Dealer will provide proof to the satisfaction of the Company, that the parts sought to be returned were purchased by the Dealer pursuant to and during the term of a Dealer Sales and Service Contract in effect between the Dealer and White–New Idea Farm Equipment Company, A Division of Allied Products Corporation, and not from any predecessor company or other entity."

Farm Equipment alleges that, under the annual parts return clause, Allied not only accepted repair parts purchased from it but also repair parts purchased from Allied's predecessors.

Farm Equipment acknowledges the no oral modification and non-waiver clauses in the contract: "This Agreement may not be altered, modified, amended or changed, in whole or in part, except in writing and executed by [Allied] and [Farm Equipment] in the same manner as is provided for the execution of this Agreement" and "Failure of either party to enforce any of the provisions of this Agreement or any rights with respect thereto or failure to exercise any election provided for herein shall in no way be considered to be a waiver of such provisions, rights or elections or in any way affect the validity of this Agreement."

The contract also had a "Repurchase on Termination" provision. This clause obli-

gated Allied, upon termination of the contract, to repurchase from Farm Equipment unsold repair parts in Farm Equipment's inventory that Farm Equipment had purchased from Allied:

> "c. **Repair Parts.** Upon termination of this contract, [Allied] agrees to repurchase and [Farm Equipment] agrees to sell and to deliver ... those parts purchased from [Allied] hereunder then on hand unsold, which are in [Allied's] opinion new and salable, and which are included in [Allied's] current Parts Return List.

> \*     \*     \*     \*     \*     \*

> d. **Limitation of Repurchase Obligation.** The Obligation of [Allied] to repurchase ... repair parts is limited to those ... repair parts purchased by [Farm Equipment] from [Allied] under this Agreement."

Upon termination of the contract, Allied repurchased those repair parts which had been purchased from it. However, Allied refused to repurchase the repair parts purchased from Allied's predecessors.

Farm Equipment argues that by accepting repair parts purchased from Allied's predecessors under the Annual Parts Return Program, Allied modified the contract through a "course of performance" to permit return of the repair parts purchased from Allied's predecessors. Therefore, Farm Equipment contends that the modification of the return provision of the Annual Parts Return Program also modifies the repurchase provisions of the contract requiring Allied to repurchase repair parts purchased from Allied's predecessors. Although Farm Equipment acknowledges that there were no oral modification and non-waiver provisions in the contract, Farm Equipment believes that Allied has waived these provisions pursuant to the Uniform Commercial Code (U.C.C.).

Two sections of the U.C.C., IND.CODE § 26–1–2–208 and IND.CODE § 26–1–2–209, are cited in support of Farm Equipment's argument. IND.CODE § 26–1–2–208(1) and (3) (1988 Ed.) explain "course of performance":

> "(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

> \*     \*     \*     \*     \*     \*

> (3) Subject to the provisions of IC 26–1–2–209 on modification and waiver, such course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance."

Farm Equipment asserts that when Allied accepted the repair parts, which had been purchased from Allied's predecessors, under the Annual Parts Return Program, Allied established a "course of performance" permitting return of repair parts purchased from Allied's predecessors. Therefore, Farm Equipment argues, Allied is obligated to accept return of these repair parts under the contract as modified.

The U.C.C. states the following regarding modification and waiver:

> "(2) A signed agreement which excludes modification or rescission, except by a signed writing, cannot be otherwise modified or rescinded[.]

> \*     \*     \*     \*     \*     \*

> (4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) [Statute of Frauds], it can operate as a waiver."

IND.CODE § 26–1–2–209(2) and (4) (1988 Ed.)

Allied contends Farm Equipment is prevented from modifying the agreement under IND.CODE § 26–1–2–209(2) since there was a no oral modification clause. Furthermore, since a non-waiver provision was included in the contract, Allied claims that waiver under IND.CODE § 26–1–2–209(4) is not possible. Farm Equipment, on the other hand, argues that under IND.CODE § 26–1–2–209(4) Allied waived its no oral modification and non-waiver provisions through a "course of performance."

Both parties cite to *Marlowe v. Argentine Naval Comm'n* (D.C.Cir.1986), 808 F.2d 120, in support of their arguments. It is true, as Allied notes, that the *Marlowe* court rejected plaintiff's oral modification of the contract due to the fact that the contract permitted only written modifications. The U.C.C. statute cited in the decision corresponds to IND.CODE § 26–1–2–209(2). Likewise, the court refused to permit plaintiff's waiver theory under the U.C.C., which section corresponds with IND.CODE § 26–1–2–209(4), since the contract had a non-waiver clause. But as Farm Equipment points out, the court, in dicta, declared that had there been a "course of performance" established between the parties, it would seem harsh to read the contract provisions so strictly as to preclude waiver. *Id.* at 124.

There appears to be a split of authority on whether a party's "course of performance" can override no oral modification or non-waiver provisions in a contract. Some courts strictly construe such provisions precluding a party's "course of performance" from operating as a modification or waiver. Other courts believe that these no oral modification or non-waiver provisions are subject to modification or waiver like any other term in the contract. *Westinghouse Credit Corp. v. Shelton* (10th Cir. 1981), 645 F.2d 869, 873. However, whether such a waiver or modification occurred is a question of fact for the fact-finder which would make summary judgment inappropriate.

A question of fact as to whether Allied waived or modified the terms in the contract is not present in this case. The provision which Farm Equipment claims Allied modified was the Annual Parts Return provision. Although Farm Equipment claims that this provision and the provision for Repurchase on Termination are "identical" making a modification of one provision an automatic modification of the other, this is not true. The two provisions are similar in certain respects but not identical.

Obviously, the Annual Parts Return provision applies when the contract is still in effect, while the Repurchase on Termination provision is effective after the contract has been terminated. But more importantly, Farm Equipment only received a credit under the Annual Parts Return Program. This credit was limited to no more than 10% of the dealer's purchases from Allied during the previous year. For 1987, this amounted to approximately $4,000.00–$5,000.00.

Under the Repurchase on Termination provisions, Allied had to repurchase the repair parts. The repurchase of its own parts cost approximately $40,000.00. Repurchase of the parts from its predecessors would have cost approximately $210,000.00.

The evidence presented demonstrated that the Annual Parts Return Program was for the mutual benefit of both parties. However, Allied is not receiving any such increased sales volume and economic benefit under the Repurchase on Termination clause. Similarly, the Annual Parts Return Program evinces goodwill between the parties. This is not necessary upon termination.

▪ Therefore, while the two provisions may appear similar at first glance, they have fundamental differences. Allied may not be forced to accept predecessors' repair parts under the termination clause just because it did so under the annual return clause of the contract. A modification or waiver of one part of the contract dealing with returns does not automatically result in a wholesale waiver or modification of other return provisions in the contract.

*See also Marlowe, supra,* at 124 n. 2; *Double–E Sportswear Corp. v. Girard Trust Bank* (3rd Cir.1973), 488 F.2d 292. Any modification or waiver on Allied's part is restricted to those specific terms in the Annual Parts Return Program. The Repurchase on Termination clause is a separate and different clause and should be treated as such. The trial court properly granted summary judgment on this issue to Allied.

Affirmed.

GARRARD and MILLER, JJ., concur.