**RADIATION SYSTEMS, INC., Plaintiff,**

v.

**AMPLICON, INC., Defendant.**

Civ. A. No. 92–1240 SSH.

United States District Court,
District of Columbia.

March 24, 1995.

**1102**

David M. Lewis, Mandel, Lewis & Goldberg, McLean, VA, for plaintiff.

Robert R. Vieth, K. Stewart Evans and Nathan B. Smith, McGuire, Woods, Battle & Boothe, McLean, VA, for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court is the motion for summary judgment of defendant Amplicon, Inc. ("Amplicon") in an action brought by plaintiff Radiation Systems, Inc. ("RSI") alleging breach of contract due to failure to pay for goods sold and delivered.

▪ Summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). All evidence and inferences to be drawn from it must be considered in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is not available if material facts remain at issue or are susceptible to reasonable divergent inferences. *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its reasoning. *See* Fed.R.Civ.P. 52(a).

### Background

This dispute arises in a context commonly referred to as a tripartite commercial leasing transaction. Defendant Amplicon is a lease financing entity that assists third parties, in this case Financial News Network, Inc./United Press International ("UPI"), in the acquisition of certain materials from the supplier, RSI. Amplicon purchases equipment from the supplier and subsequently leases it to the third party. Amplicon does not purchase materials for its own use or inventory; rather, Amplicon conditions its purchase on a successful lease to the interested third party.

On April 20, 1989, Amplicon issued a purchase order to RSI for 200 antenna installations ("purchase order"), which were to be delivered to UPI. The purchase order was a preprinted form prepared by Amplicon. Beginning September 28, 1989, RSI delivered partial shipments to UPI on a piecemeal basis. UPI accepted certain equipment delivered to it by RSI, and Amplicon paid RSI for some of the partial shipments. As of July 31, 1990, however, Amplicon had not paid RSI for 53 of its invoices. RSI filed this breach of contract action seeking $70,365.04 in damages.

### Discussion

The controversy in this case arises from the terms of the purchase order. The purchase order states, in relevant part:

Please enter our [Amplicon's] order for the above-described property, herein called the "Equipment", subject to the following terms and conditions:

1. If the Lessee [UPI] does not accept the Equipment or any part thereof for any reason, by executing our [Amplicon's] Delivery and Acceptance Certificate within 90 days of the date hereof [April 20, 1989], or if the Lessee [UPI] does not execute any other required lease documents for any reason, we shall have no obligation hereunder . . .

. . . .

7. We [Amplicon] shall pay the total price of the Equipment within 30 days after receipt of your [RSI] invoice and written acceptance of the Equipment by the Lessee [UPI] by execution and delivery of our [Amplicon's] Delivery and Acceptance Certificate. No payments shall be made for partial shipments other than the last partial shipment, unless otherwise agreed by you [RSI] and us [Amplicon].

Complaint, Exhibit 1. Because the purchase order is a contract for the sale of goods, the Uniform Commercial Code ("UCC"), as adopted by local statute, controls. D.C.Code Ann. §§ 28:1–101 through 28:2–725 (1981 & Supp.1994); *Marlowe v. Argentine Naval Comm'n*, 808 F.2d 120, 122 (D.C.Cir.1986).

Amplicon contends that paragraph 1 of the purchase order creates an express condition precedent which requires that certain documents be executed before Amplicon's obligation to pay arises. Amplicon moves for summary judgment on the grounds that: (1) RSI failed to satisfy this condition; and (2) RSI failed to execute the proper documents or complete performance within the 90–day time frame set by paragraph 1.

RSI argues that the express terms of the purchase order were modified by prior oral agreements and subsequent performance consistent therewith which established a modification of both the condition precedent and the 90–day time frame. RSI argues, in the alternative, that Amplicon's acceptance of non-conforming goods acted as a waiver of the purchase order's express terms.

### 1. Modification of the Express Terms of the Purchase Order

■ Generally, when parties have reduced their entire agreement to writing, the parol evidence rule excludes evidence of prior or contemporaneous oral agreements inconsistent with the express terms of the writing. *Cusimano v. First Maryland Sav. and Loan, Inc.*, 639 A.2d 553, 560 (D.C.1994); *Stamenich v. Markovic*, 462 A.2d 452, 455 (D.C. 1983). Although the express terms may not be contradicted by prior or contemporaneous agreements, they may be explained or supplemented by evidence of a course of performance. D.C.Code Ann. § 28:2–202(a).

■ Even if the parol evidence rule bars consideration of prior oral agreements, the parties' actions can constitute a course of performance that modifies the express terms of an agreement. D.C.Code Ann. § 28:2–208(1) provides:

> Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without

objection shall be relevant to determine the meaning of the agreement.

Courts interpreting substantially similar UCC provisions have held that where the facts of a case indicate such a course of performance, modification of the agreement's express terms becomes a triable issue of fact, not a matter for summary judgment. *See, e.g., Marine Midland Bank v. Midstate Lumber Co., Inc.*, 79 A.D.2d 783, 435 N.Y.S.2d 78, 79 (1980).

#### a. Execution of the Delivery and Acceptance Certificate

■ Amplicon asserts that, under paragraphs 1 and 7, as a condition precedent to its obligation to pay for the goods, UPI must accept the equipment by executing the delivery and acceptance certificate provided by Amplicon, and that no other certificate of acceptance satisfies the condition. Thus, although RSI provided Amplicon with installation certificates signed by UPI affiliates that had received the shipments, Amplicon maintains that these certificates do not qualify as "Amplicon's Delivery and Acceptance Certificate" under the purchase order. The effect of failing to execute the proper documents, contends Amplicon, is that its obligations related to the unpaid invoices are discharged.[1]

RSI asserts that a genuine issue of material fact exists because the documents that UPI delivered were reasonably interpreted to qualify as the required delivery and acceptance certificate. RSI contends that when Amplicon paid RSI for partial shipments accepted by UPI on certificates other than Amplicon's, Amplicon established a course of performance rendering RSI's continuing shipments within the scope of the purchase order.

Courts have been reluctant to adhere to such extremely rigid interpretations of express terms when doing so would not serve the underlying purpose of the terms. The First Circuit, construing a similar provision requiring the signing of a specific acceptance

---

1. Amplicon reasons that, as a lease financing entity, it accepts responsibility only for equipment delivered as part of a finalized tripartite lease transaction. Applying this rationale, Amplicon concludes that UPI's failure to deliver the proper documents or, alternatively, UPI's failure to deliver all required documents, removes RSI's subsequent performance from the scope of the agreed upon tripartite leasing transaction thereby discharging Amplicon from any obligation.

certificate, declined to require the acceptance to be on a specific form. *Midwest Precision Serv., Inc. v. PTM Indus. Corp.*, 887 F.2d 1128 (1st Cir.1989). The court reasoned that the purpose of a provision requiring proof of acceptance was to protect "against the seller's non-performance, not to erect a technical barrier to [the seller's] right to payment." *Id.* at 1134. The underlying purpose of the contract provision in *Midwest Precision* was to ensure performance, not to guarantee that the signed acceptance would be on a specific piece of paper. The same rationale applies to the provision in paragraph 1 of Amplicon's purchase order.

This Circuit also has observed that, if a course of performance has been established, an agreement's express terms should not be read to yield a harsh and unreasonable result. *Marlowe,* 808 F.2d at 124. Although the court rejected a claim of modification by course of performance where no course of performance had been established, the court observed that:

> [I]f plaintiff had performed according to the oral modifications and defendant had accepted that performance over a course of ·time, and then defendant had reversed its field and sought to have all of plaintiff's performances declared in breach of contract—it would seem harsh to read this language so strictly as to preclude waiver.

*Id.* Under the facts of this case, evidence exists that RSI performed according to oral modifications, and Amplicon accepted that performance over time. RSI has presented sufficient evidence that Amplicon's payment for partial shipments spanning ten months involving UPI's execution of the alleged incorrect acceptance certificates amounted to a course of performance. Whether this course of performance modified the requirement that a special delivery and acceptance certificate provided by Amplicon be executed is a factual issue for the jury to resolve. *See Marine Midland Bank,* 435 N.Y.S.2d at 79. Accordingly, summary judgment is not appropriate.

### b. The 90–Day Time Limit

■ Amplicon also maintains that RSI did not deliver any equipment nor did UPI issue any acceptance certificates within the 90–day time frame specified in paragraph 1 of the purchase order, thus relieving Amplicon of its obligation to pay. The purchase order was dated April 20, 1989; RSI's delivery began September 28, 1989 and continued through July 31, 1990.

RSI responds that, during the negotiation stage and the subsequent course of performance, the parties orally agreed to modify the purchase order to extend the 90–day period because 90 days was insufficient to complete the 200 shipments required. RSI notes that, had Amplicon intended to adhere to the literal 90–day limit, any shipment after July 20, 1989 (90 days after the purchase order date) would be invalid. However, RSI did not begin shipment until September 1989, and Amplicon accepted performance from that date through July 1990.[2]

The issue of whether the 90–day period set in paragraph 1 of the purchase order was modified is governed by the same rules governing the issue of the delivery and acceptance certificate. *See supra* at 1103. RSI has provided sufficient evidence to reasonably conclude that Amplicon established a course of performance by paying for partial shipments that occurred outside the 90–day period required by the purchase order. Whether this conduct amounted to a modification of the express terms of the purchase order is a question of fact to be resolved at trial.

Although the parol evidence rule can exclude oral negotiations prior to the signing of a written contract, RSI's evidence of prior oral agreements should not be excluded under the circumstances presented in this case. Because the subsequent course of performance reasonably could be construed to be consistent with the prior oral agreements, the evidence of prior negotiations may assist the trier of fact in determining whether the

---

**2.** RSI contends that by making payments for partial shipments Amplicon waived the provision in paragraph 7 that "[n]o payment shall be made for partial shipments ... unless otherwise agreed by you [RSI] and us [Amplicon]." Whether the parties' subsequent course of performance constituted an "otherwise agreed upon" interpretation of the purchase order's requirements is also a question of fact for the jury.

express terms of the agreement had been modified and thus should not be excluded.

### 2. Waiver

#### a. Waiver by Course of Performance

█ Summary judgment also is inappropriate because a genuine issue of material fact exists as to whether the express terms of the purchase order were waived by the conduct of the parties. Courts have often held that UCC §§ 2–208 and 2–209 (adopted in D.C.Code Ann. §§ 28:2–208 and 28:2–209) read together stand for the proposition that parties' course of performance (after the execution of a contract) straying from the express wording of the agreement can operate as a waiver of the express terms. *T.J. Stevenson & Co., Inc. v. 81,193 Bags of Flour*, 629 F.2d 338, 365 (5th Cir.1980); *Crosby–Mississippi Resources v. Florida Gas Transmission Co.*, 815 F.Supp. 977, 981 (S.D.Miss.1993); *J.W. Goodliffe & Son v. Odzer*, 283 Pa.Super. 148, 423 A.2d 1032, 1034–35 (1980).

RSI's performance subsequent to the execution of the purchase order took place entirely after the 90–day period provided for in paragraph 1. Moreover, Amplicon paid for partial shipments received after the 90–day time frame, and UPI executed its acceptance on delivery and acceptance certificates other than Amplicon's own certificate. Because a jury reasonably could conclude that Amplicon's conduct constituted a waiver of express terms, summary judgment is not appropriate. *Tao*, 27 F.3d at 638.

#### b. Waiver by Acceptance of Non–Conforming Goods Without Seasonable Notice of Objection

█ RSI also argues that Amplicon's acceptance of non-conforming goods signified a waiver of the express terms of the purchase agreement. Several UCC provisions indicate that acceptance of non-conforming goods can signify a waiver of the express terms of an agreement. *See, e.g.,* D.C.Code Ann. § 28:2–602(1) (deeming rejection ineffective unless the buyer seasonably notifies the seller of rejection of goods within a reasonable time of delivery); § 28:2–606(1) (deeming goods "accepted" when the buyer fails to make an effective rejection after a reasonable time to inspect the goods); § 28:2–612(3) (in the context of installment contracts, deeming non-conformity of one installment a breach of the whole unless the aggrieved party reinstates the contract by accepting "a non-conforming installment without seasonably notifying of cancellation."). These provisions considered together indicate that one party's acceptance or acquiescence without timely objection to non-conforming performance may be evidence of waiver of the express contract terms. *See Agathos v. Starlite Motel*, 977 F.2d 1500, 1509 (3d Cir.1992). This Circuit previously has held that what constitutes a "reasonable time" is a question of fact unless there is only one possible conclusion. *Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Sys., Inc.*, 665 F.2d 1066, 1069 (D.C.Cir.1981) (construing D.C.Code Ann. § 28:2–607(a)(3)).

The Court finds that questions of material fact exist regarding whether Amplicon accepted non-conforming goods by not giving seasonable notice of its objection thereto. Accordingly, summary judgment is inappropriate on this ground as well.

### Conclusion

For the foregoing reasons, defendant Amplicon's motion for summary judgment is denied. An appropriate Order accompanies this Opinion.

### ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendant's motion for summary judgment is denied.

SO ORDERED.