**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

———————

No. 97-1114

———————

Klipsch, Inc.,                                           *
                                                        *
              Appellant,                                *
                                                        *  Appeal from the United States
       v.                                               *  District Court for the Western
                                                        *  District of Arkansas.
WWR Technology, Inc.,                                    *
                                                        *
              Appellee.                                 *

———————

Submitted: June 11, 1997
    Filed: October 14, 1997

———————

Before BOWMAN, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD,
      Circuit Judges.

———————

BOWMAN, Circuit Judge.

    In exchange for various debt instruments, Klipsch, Inc. sold nearly all of the assets from its professional loudspeaker business to WWR Technology, Inc. (WWR) and licensed WWR to use Klipsch's patents and trademarks. As part of the purchase price, WWR issued a debenture to Klipsch. When Klipsch's attempt to redeem the debenture from either WWR or WWR's parent company failed, Klipsch brought an action in district court to collect on the debenture and to replevin collateral under a Security Agreement covering the assets sold to WWR. After WWR paid Klipsch the remaining balance on the debenture, the case ultimately was dismissed. On the same

day that Klipsch received payment for the debenture, however, Klipsch filed its complaint in the present action alleging, among other things, trademark and patent infringement by WWR. After allowing WWR to amend its complaint to assert an affirmative defense of res judicata, the District Court granted WWR's motion for summary judgment, based on the affirmative defenses of res judicata, waiver, and equitable forfeiture. We reverse.

## I.

In 1992, Klipsch, WWR, and WWR's then-parent company entered into a series of agreements involving Klipsch's professional loudspeaker business. Besides an Asset Purchase Agreement, a Security Agreement, and a Manufacturing Agreement, the parties entered into a Non-Exclusive Patent and Trademark License, Non-Competition and Right of First Refusal Agreement [hereinafter License Agreement], which granted various Klipsch licenses to WWR. The License Agreement was revised by an August 5, 1994, Extension and Modification Agreement [hereinafter Extension Agreement] entered into by Klipsch, WWR, and WWR's current parent company, Concept Technologies Group, Inc. (Concept). The agreement effectively extended the maturity date of the original debenture and substituted Concept in the place of WWR's previous parent company in the original agreements. The agreement also provided, inter alia, that upon default or breach of the substitute debenture, "[t]he licenses shall automatically terminate, and all rights thereunder shall revert to Klipsch." The substitute debenture allowed Klipsch the option to require redemption at any time on or after June 30, 1995, provided prior written notice to Concept was given, and it stated that Klipsch shall receive periodic payments of interest from Concept. After Klipsch gave sufficient prior notice of redemption, Concept was unable to redeem the substitute debenture. Additionally, Concept failed to pay timely the July 1, 1995, interest payment.

In a July 5, 1995, correspondence, Klipsch informed Concept of two consequences of its failed redemption and late interest payment--Klipsch had a right to pursue its security interest in the collateral held by WWR, and the licenses granted to WWR had terminated and reverted to Klipsch. On July 24, 1995, Klipsch filed a complaint against WWR and Concept, in which Klipsch sought from WWR the assets that served as collateral pursuant to the Security Agreement and from Concept the remaining balance of principal and interest on the substitute debenture less any proceeds realized from disposition of the collateral. WWR paid the remaining balance on the substitute debenture on August 15, 1995, and after resolving issues of attorney fees and expenses, the District Court dismissed the case on November 6, 1995.

August 15, 1995, also marked the date that Klipsch filed its complaint in the present action, naming only WWR as a defendant and alleging trademark infringement pursuant to 15 U.S.C. § 1114 (1994), patent infringement pursuant to 15 U.S.C. § 1125(a) (1994), and unfair competition pursuant to both 15 U.S.C. § 1125(a) (1994) and Indiana state law, in addition to seeking a declaratory judgment that its covenant not to compete with WWR had expired. Klipsch's right to recover under these various theories grows from the failure of WWR or Concept to redeem the substitute debenture and their failure to make a timely interest payment, just as the right to recover did in the first action. In this action, however, Klipsch focuses not on the failure to redeem itself or the failure to make a timely interest payment, but on the effect of these failures-- triggering of the License Agreement's automatic termination provision. Klipsch filed a motion for partial summary judgment on September 17, 1996, and in response WWR filed a cross-motion for summary judgment on the grounds of res judicata, waiver, and equitable forfeiture. Not until October 23, 1996, however, six days after the District Court conducted a hearing on the parties' summary judgment motions, did WWR file a motion to amend its answer to assert the affirmative defense of res judicata. The District Court granted the motion to amend WWR's answer on November 7, 1996. Summary judgment in favor of WWR on the grounds of res judicata, waiver, and equitable forfeiture was granted on December 19, 1996.

## II.

Klipsch claims that the District Court erred in: (1) permitting WWR to amend its answer to assert res judicata, (2) granting summary judgment for WWR, and (3) denying Klipsch's motion for summary judgment.

## III.

Klipsch argues that the District Court erred in granting WWR's motion to amend its answer to assert the affirmative defense of res judicata. We review for abuse of discretion a district court's decision to allow a party to amend an answer. See Corsica Livestock Sales, Inc. v. Sumitomo Bank, 726 F.2d 374, 377 (8th Cir. 1983). Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Amendments to pleadings should be allowed with liberality in the absence of circumstances such as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (noting that "only limited circumstances justify a court's refusal to grant leave to amend pleadings"). Having carefully considered all of Klipsch's arguments on this point, we cannot say that the District Court abused its discretion by granting WWR leave to amend.

## IV.

The District Court granted summary judgment in favor of WWR on three alternative grounds, each of which is challenged by Klipsch on appeal. We review de novo the decision to grant summary judgment. See Temporomandibular Joint (TMJ) Implant Recipients v. Dow Chemical Co. (In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.), 113 F.3d 1484, 1492 (8th Cir. 1997). "Summary

judgment is proper only when, viewing the evidence in the light most favorable to the nonmoving party, the record presents 'no genuine issue of material fact . . . and the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Federal Rule of Civil Procedure 56(c)). Likewise, we review de novo a district court's determination of state law. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

**A.**

The District Court, in granting summary judgment in favor of WWR, held that the affirmative defense of res judicata barred Klipsch from seeking the relief sought in this second action. Before addressing the District Court's res judicata analysis, however, we first must settle the choice-of-law question the case presents. In the first action, the District Court exercised its diversity jurisdiction under 28 U.S.C. § 1332 (1994). The District Court sat in Arkansas, but pursuant to the parties' Security Agreement and Extension Agreement the court applied Indiana substantive law.[1] In the second action, confronted with the res judicata issue, the District Court determined that federal rules of res judicata were applicable because the prior litigation was brought in federal court. This is not the rule when the prior litigation was brought in federal court under diversity jurisdiction. When the prior judgment is one entered in a diversity case, the preclusive effect of the prior judgment is determined by the preclusion rules of the forum that provided the substantive law underlying that judgment. See Hicks v. O'Meara, 31 F.3d 744, 746 (8th Cir. 1994). Because Indiana substantive law governed

---

[1]The substitute debenture that was the subject of the first action was issued pursuant to the Extension Agreement, which incorporated a section of the License Agreement that provides: "This Agreement shall be interpreted and enforced in accordance with the laws of the State of Indiana." Similarly, the Security Agreement that was also at issue in the first action states that it "shall be governed by, and construed in accordance with, the laws of the State of Indiana." The parties' transaction bore a reasonable relation to both Indiana and Arkansas, and thus the parties could choose to apply the law of either state. See Ark. Code Ann. § 4-1-105(1) (Michie Supp. 1995).

the first action, the District Court should have looked toward the res judicata rules of Indiana in assessing the preclusive effect of its judgment in that action.

Res judicata precludes the relitigation of a claim on grounds that were raised or might have been raised in a prior action. See Town of Flora v. Indiana Serv. Corp., 53 N.E.2d 161, 163 (Ind. 1944); Wedel v. American Elec. Power Serv. Corp., 681 N.E.2d 1122, 1131 (Ind. Ct. App. 1997). Res judicata consists of two preclusion concepts--issue preclusion and claim preclusion. See, e.g., Wedel, 681 N.E.2d at 1131. The claim preclusion aspect of res judicata, which is at issue here, provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147 (1979); see Wedel, 681 N.E.2d at 1131. Klipsch argues that the doctrine of res judicata should not bar its second action because the two suits do not involve the same cause of action.[2] Moreover, Klipsch continues, even if the doctrine of res judicata would otherwise be available, WWR has waived the defense by its acquiescence to the maintenance of two separate suits.

We need not pause to consider whether under Indiana law Klipsch's second lawsuit is merely a repackaging of the same claims presented in its first lawsuit. Assuming arguendo that the claims in the two actions are the same for res judicata purposes, we nevertheless agree with Klipsch that because WWR did not object to the splitting of Klipsch's claims into two different suits, WWR has, through acquiescence, waived the defense of res judicata.

---

[2]Klipsch argues that Federal Rule of Civil Procedure 18(a), dealing with permissive joinder of claims, is the proper tool to analyze whether this second action can be brought. Because the defense of res judicata was asserted after the District Court rendered a final judgment on the merits in the prior action, the principles of res judicata are clearly applicable.

According to the Restatement (Second) of Judgments, a claim is not extinguished pursuant to the general rule against claim splitting "and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant [when]: (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Restatement (Second) of Judgments § 26(1) (1982). The Comment interpreting this rule sheds light on the idea of acquiescence.

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

Restatement (Second) Judgment § 26 cmt. a (1982).

We apply the Restatement (Second) of Judgments and conclude that WWR clearly acquiesced to Klipsch's splitting of its claim into two suits. Klipsch filed a complaint in the first action on July 24, 1995, and it filed a complaint in the present action on August 15, 1995. Until November 6, 1995, the date the first action was dismissed, both actions were proceeding simultaneously, and at no time did WWR object that another action was pending on the same claim. The District Court, however, declined to follow the Restatement (Second) of Judgments on this issue. The court noted that it was unaware of any Eighth Circuit decision adopting Restatement (Second) of Judgments section 26(1)(a), and found that WWR was not under any affirmative obligation to object to the splitting of the cause of action. The court instead focused on Klipsch's conduct, and Klipsch's decision to file two suits arising out of the same factual scenario.

The District Court erred in its decision not to follow Restatement (Second) of Judgments section 26(1)(a). The court should have examined whether Indiana courts, not the Eighth Circuit, have adopted section 26(1)(a). Like the Eighth Circuit, however, Indiana courts have neither adopted nor rejected section 26(1)(a). We then are left to apply our best judgment to the question of whether the Indiana Supreme Court would adopt the approach taken in section 26(1)(a) if given the opportunity to do so. We conclude that it is likely it would. Accordingly, the District Court's observation that Klipsch could have asserted all of its rights against WWR in a single suit, though correct, is not dispositive. In simultaneous actions, under the approach reflected in section 26(1)(a) the focus should be on whether the defendant could have objected to the plaintiff's splitting of his claim. A main purpose of the general rule against claim splitting "is to protect the defendant from being harassed by repetitive actions based on the same claim." Restatement (Second) of Judgments § 26 cmt. a; see also Johnson v. Anderson, 590 N.E.2d 1146, 1150 (Ind. Ct. App. 1992). If a defendant chooses not to make the objection that another action based on the same claim is pending, that defendant has waived this protective aspect of res judicata and acquiesces to the splitting of the claim. See Kern Oil & Ref. Co. v. Tenneco Oil Co., 840 F.2d 730, 735 (9th Cir. 1988), cert. denied, 488 U.S. 948 (stating that defendant could not object to claims being split where both actions had been pending in federal court without objection from defendant and defendant first raised claim-preclusion objection after judgment in one case); James Wm. Moore et al., Moore's Federal Practice § 131.24[1] (3d ed. 1997) ("Acquiescence . . . occurs when a defendant allows two simultaneous actions on the same claim to proceed without objection").

On the facts of this case, WWR had ample opportunity to object, prior to the entry of judgment in Klipsch's first lawsuit, to the splitting of a single claim that WWR contends resulted from Klipsch's filing of its second lawsuit. Klipsch filed its second lawsuit on August 15, 1995, and the District Court entered judgment in Klipsch's first lawsuit approximately three months later, on November 6, 1995. Yet not until September 17, 1996--more than a year after Klipsch had filed its second lawsuit and

some nine months after the entry of judgment in the first lawsuit--did WWR raise for the first time (by way of its response to Klipsch's motion for partial summary judgment) the suggestion that Klipsch's second lawsuit was barred by the judgment in the earlier case. WWR's failure to object until after judgment had been entered in the first lawsuit can only be regarded as acquiescence in the splitting of the claim. We thus hold that the District Court's judgment in the first action does not preclude Klipsch from obtaining judgment in the present action. Because of WWR's acquiescence, the affirmative defense of res judicata is unavailable, and the District Court's grant of summary judgment in favor of WWR on this ground is improper. Summary judgment on WWR's res judicata defense should be entered in favor of Klipsch.

**B.**

The District Court also granted summary judgment to WWR based on the affirmative defense of waiver. The parties' License Agreement, as amended by the Extension Agreement, contains an automatic termination provision which provides that upon default or breach of the substitute debenture, "[t]he [l]icenses shall automatically terminate, and all rights thereunder shall revert to Klipsch." The court found that Klipsch waived its right to enforce the automatic termination provision of the License Agreement by its prior acceptances of defective performance. Thus, despite the breach of the substitute debenture, the rights under the License Agreement remained with WWR, thereby rendering Klipsch's assertions in this action untenable.

Klipsch advances various arguments as to why the District Court erred in granting summary judgment to WWR based on the affirmative defense of waiver. First, Klipsch contends that the agreements' non-waiver clauses prevented it from waiving the right to enforce the termination provision. Second, even assuming the unenforceability of the non-waiver clauses, genuine issues of material fact existed as to whether Klipsch actually waived its right to terminate the License Agreement. Third, any waiver that may have been previously granted by Klipsch had been sufficiently revoked by the time

WWR and Concept failed to redeem the substitute debenture.  Based on these arguments, Klipsch concludes that summary judgment on the defense of waiver should be entered in its favor, or alternatively, the grant of summary judgment in favor of WWR should be reversed and the matter should be remanded for trial because genuine issues of material fact exist as to whether Klipsch waived the right to invoke the automatic termination provision.

Non-waiver provisions exist in or are incorporated into each of the relevant agreements.  As an example, the non-waiver provision in the License Agreement provides:

> The waiver by either party of any breach of this Agreement by the other party in a particular instance shall not operate as a waiver of subsequent breaches of the same or different kind.  The failure of either party to exercise any rights under this Agreement in a particular instance shall not operate as a waiver of such party's right to exercise the same or different rights in subsequent instances.

The District Court found that under Indiana law[3] the existence of the non-waiver provisions does not prohibit WWR from asserting the defense of waiver.  Klipsch contends that under Indiana law non-waiver clauses are enforceable, and that in any event, there is no support for a determination that Klipsch waived its rights under the non-waiver provision.

Klipsch relies upon the Indiana Supreme Court's decision in <u>Van Bibber v. Norris</u>, 419 N.E.2d 115 (Ind. 1981), to support its argument that the non-waiver provision in the License Agreement prevents WWR from asserting the defense of

---

[3]The License Agreement provides that Indiana law shall apply in interpreting and enforcing the agreement.  We agree with the District Court's decision to apply Indiana law in analyzing the issue of waiver.

-10-

waiver.  In Van Bibber, the parties entered into an installment sale security agreement, which provided for debtor's purchase of a mobile home from seller.  During the course of the agreement, seller's bank accepted numerous late payments from debtor, without declaring a default.  In the sixth year of the security agreement, however, after an untimely payment, the bank declared a default and repossessed the mobile home.  The trial court found that the bank, through its pattern of accepting late payments, had waived its right to enforce strict compliance with the terms of the security agreement.  The Indiana Supreme Court reversed, holding that the trial court improperly had ignored the security agreement's non-waiver clause, which prevented the acceptance of late payments from acting as a waiver of the bank's right to strictly enforce the terms of the agreement.  See id. at 121.

We hold that Van Bibber does prevent WWR from successfully asserting its waiver defense.  The District Court noted that "[a] broad interpretation of Van Bibber would bar WWR's waiver argument," but found "that such a broad interpretation would be improper."  Klipsch, Inc. v. WWR Technology, Inc., No. 95-4076, mem. op. at 13 (W.D. Ark. Dec. 19, 1996).  The District Court reasoned that language in Van Bibber strongly indicated that the Indiana Commercial Code compelled that court's holding, and that Indiana cases decided since Van Bibber extend its holding only to cases involving non-waiver clauses in the mortgage context.  We believe that the language in Van Bibber is sufficiently expansive to apply to this case.  The late payments relied upon by WWR to support its waiver argument involved late payments on two notes and a previous debenture, both of which had been issued by WWR and its prior parent company as part of the original transaction involving the sale of Klipsch's professional loudspeaker business.  Klipsch did not sell its professional loudspeaker business's assets to WWR in exchange for a one-time lump sum payment; instead payments were due on these various instruments at different times, similar to an installment contract.  The specific purpose of the non-waiver clause as stated in Van Bibber, "avoiding the risk of waiver by notifying the debtor in a contract term that the secured party's acceptance of late payments cannot be relied on as treating the time provisions as

-11-

modified or waived," seems equally germane to the present case. Van Bibber, 419 N.E.2d at 121. If the parties' License Agreement "is to be truly effective according to its terms, we must conclude that [Klipsch] did not waive its rights to demand strict compliance and to pursue its contract and statutory remedies." Id. Additionally, rather than narrow the breadth of Van Bibber's holding, we believe that subsequently decided Indiana cases expand the holding. While the District Court and WWR reference a string of cases applying Van Bibber's holding to cases involving a mortgage, see, e.g., First Fed. Sav.& Loan Assoc. v. Stone, 467 N.E.2d 1226, 1232 (Ind. Ct. App. 1984), there is no authority that the holding is limited to the mortgage or other particular contexts.

Moreover, irrespective of the enforceability of the non-waiver clauses, WWR has not demonstrated a pattern of accepting late payments that would justify a determination of waiver of the License Agreement's automatic termination provision. See van de Leuv v. Methodist Hosp., 642 N.E.2d 531, 533 (Ind. Ct. App. 1994) (stating that party asserting waiver defense has burden of proving that defense). As evidence of waiver, the District Court referred to several instances, spanning from April 1993 to January 1994, where Klipsch extended the maturity date on the two notes that had been issued as part of the original transaction involving the sale of Klipsch's assets. Moreover, the court noted that the Manufacturing Agreement had been extended twice, lastly as part of the August 5, 1994, Extension Agreement, which also effectively extended the maturity date of the original debenture by replacing that debenture with a substitute debenture with a later maturity date. There is no evidence that Klipsch ever waived any of its rights under the Extension Agreement or the substitute debenture. See van de Leuv, 642 N.E.2d at 533 ("Waiver is an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it."). The instances of defective performance accepted by Klipsch, the most recent of which was on August 5, 1994, did not constitute a waiver of Klipsch's right to invoke the License Agreement's automatic termination provision for a breach of the substitute debenture. Klipsch arguably may have waived the right to enforce the

License Agreement's automatic termination provision for late payment on the notes or the original debenture, but it had never waived its right to enforce strict compliance with the terms of the substitute debenture. Cf. Farm Equip. Store, Inc. v. White Farm Equip. Co., 596 N.E.2d 274, 277 (Ind. Ct. App. 1992) (stating that a modification or waiver of one part of a contract does not result necessarily "in a wholesale waiver or modification of other . . . provisions in the contract"). To the contrary, a month before Klipsch's failed redemption attempt, Klipsch sent Concept a notice indicating its intention to exercise its redemption option.

Summary judgment in favor of WWR on the grounds of waiver should be reversed, and summary judgment on the grounds of waiver should be entered in favor of Klipsch.

## C.

As a final ground supporting summary judgment in favor of WWR, the District Court determined that the doctrine of equitable forfeiture bars Klipsch from enforcing the automatic termination provision of the License Agreement; therefore, the license rights at issue in the present action never reverted back to Klipsch, but remained with WWR pursuant to the original License Agreement. In support of its decision, the District Court referred to Indiana's "long standing policy against forfeiture," Klipsch, No. 95-4076, mem. op. at 21 (granting summary judgment), and to the balance of equities in favor of WWR. Klipsch argues that the District Court erred in applying the doctrine of equitable forfeiture to the parties' License Agreement and in basing its decision on disputed facts and facts not in the record, while ignoring allegedly undisputed facts that support a decision in favor of Klipsch. Klipsch seeks either a grant of summary judgment in its favor or, at a minimum, a reversal of the District Court's grant of summary judgment in favor of WWR.

We believe that the District Court incorrectly granted summary judgment in favor of WWR based on the theory of equitable forfeiture. Indiana law[4] generally disfavors forfeitures, see id.; however, forfeiture may be "appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law," Colonial Discount Corp. v. Bowman, 425 N.E.2d 266, 268 n.1 (Ind. Ct. App. 1981) (internal quotations omitted). Forfeiture based on the facts of this case is in keeping with the concepts of fairness and justice. In negotiating the License Agreement, Klipsch, WWR, WWR's then-parent company, and later Concept (via the Extension Agreement) were all represented by counsel and freely agreed to the clear and unambiguous language contained in the termination provision. Furthermore, the License Agreement provided that the license rights themselves were "terminable" and "restricted." WWR enjoyed the use of the license rights from the time the parties entered into the License Agreement in 1992 to the time Klipsch informed WWR that, based on the breaches of the substitute debenture, Klipsch was invoking the License Agreement's termination provision (Klipsch made this clear in a July 5, 1995, letter to Concept). Additionally, the license rights represented only a portion of the assets purchased by WWR from Klipsch. WWR also acquired and still retains, among other things, all of Klipsch's professional loudspeaker equipment, inventory, materials, and supplies. The District Court focused on the inequity of terminating WWR's license rights after WWR had made a late payment of the full amount owed on the substitute debenture, given WWR's efforts to develop the business. Klipsch strongly disagrees with the court's conclusory statements concerning the impact of WWR's efforts on the profitability of Klipsch's former business and the unjustness of allowing Klipsch to reap the benefits of those efforts. While there may be some dispute as to immaterial, peripheral facts, the plain, unambiguous language of the termination clause is not in dispute; nor is the fact that WWR breached the terms of the substitute debenture seriously contested. Based on these two undisputed material facts, summary judgment should not have been entered in favor of WWR on the grounds of equitable forfeiture.

_____

[4]Indiana law is also applicable in analyzing the waiver issue.

Without delving into the disputed facts relied upon by the District Court in granting summary judgment on the basis of equitable forfeiture, we note that the District Court ignored what the parties had bargained for. Forfeiture of the license rights, especially after Klipsch informed WWR and Concept that it was not going to be satisfied with late payment on the substitute debenture, does not offend notions of fairness or justice. WWR's arguments provide nothing that is a good reason for denying effect to the termination clause in accordance with its freely bargained-for terms. Klipsch is entitled to summary judgment on WWR's equitable-forfeiture defense.

## V.

Finally, Klipsch argues that the District Court erred in denying its motion for summary judgment on its patent, trademark, and non-compete-clause claims. Because we have determined that the District Court erred in granting summary judgment to WWR (and in denying summary judgment to Klipsch on the affirmative defenses discussed in the preceding portions of this opinion), we agree that the District Court erred in denying Klipsch's motion for summary judgment on its claims of patent and trademark infringement and on its claim that the non-compete clause is no longer binding. The material facts necessary to resolution of this motion are not in dispute. WWR failed to redeem the substitute debenture by June 30, 1995, in accordance with the parties' agreements and after proper notice of Klipsch's intention to exercise its option to compel such redemption. WWR also failed to remit the quarterly interest payment due Klipsch on the debenture by the due date of July 1, 1995, or within the ten day "cure" period. Each of these actions resulted in a breach of the terms of the substitute debenture, triggering the automatic termination of the parties' license agreement. As a result, WWR's right to use Klipsch patents and trademarks terminated in July 1995, and WWR's continued, non-permissive use of this property amounts to infringement. Likewise, when WWR's license to use Klipsch patents and trademarks was defaulted as a result of non-payment of the substitute debenture and of the quarterly interest, Klipsch's conditional agreement not to compete with WWR in the

professional market "so long as" WWR held a license to use the Klipsch name was rendered a nullity. Because WWR no longer holds a license to use the Klipsch name, Klipsch is no longer bound not to compete with WWR in the professional market. Summary judgment should be entered in favor of Klipsch on its claim of patent and trademark infringement and on its claim that the agreement not to compete is void.

## VI.

The grant of summary judgment in favor of WWR is reversed, and the case is remanded for further proceedings consistent with this opinion.

Floyd R. Gibson, Circuit Judge, dissenting.

I respectfully dissent because, in this case, forfeiture is not "'consonant with notions of fairness and justice under the law.'" Colonial Discount Corp. v. Bowman, 425 N.E.2d 266, 268 n. 1 (Ind. Ct. App. 1981) (quoting Skendzel v. Marshall, 301 N.E.2d 641, 650 (Ind. 1973)).[5]  In exchange for a large portion of Klipsch's assets, including the right to use various license rights under the License Agreement, WWR issued a $210,238 Equipment Note and a $701,134 Inventory Note, as well as a $425,000 Convertible Subordinated Debenture, in favor of Klipsch.  The maturity date on the Equipment Note was March 31, 1993, and the maturity date on the Inventory Note was August 31, 1993.  Klipsch extended the maturity date on the Equipment note four times and extended the maturity date on the Inventory Note three times.  When most of these extensions were granted, payment on the notes was already

---

[5]The footnote stated that the Skendzel court "recognized exceptions to the rule, when forfeiture clauses may properly be enforced," but stated that "'[w]e are persuaded that forfeiture may only be appropriate under the circumstances in which it is found to be consonant with notions of fairness and justice under the law.'" Colonial, 425 N.E.2d at 268 n.1 (quoting Skendzel, 301 N.E.2d at 650).

past due, thus triggering the Termination provision of the License Agreement. Each time, however, Klipsch neglected to act upon its right to terminate the license agreement. On February 23, 1994, WWR's then-parent company, Concept, paid WWR's obligations on the Equipment and Inventory Notes in full.

On August 5, 1994, the parties entered into an Extension and Modification Agreement which, inter alia, extended the maturity date of the Debenture from March 15, 1994 to June 30, 1995, and substituted Concept for WWR as the responsible party. The Debenture was payable on demand any time on or after the June 30th maturity date, provided Klipsch gave Concept thirty days notice. Klipsch provided notice of its intent to redeem the Debenture, but Concept failed to pay the full amount of the Debenture to Klipsch by June 30. Because Concept failed to redeem the Debenture, Concept was required to make an interest payment on July 1, 1995, which it did not pay to Klipsch until July 14. On August 15, 1995, Concept paid to Klipsch the remaining balance on the Debenture. Thus, as of August 15, 1995, Concept had paid Klipsch $210,238 on the Equipment Note, $701,134 on the Inventory Note, and $425,000 on the Debenture.

During the time that Klipsch allowed WWR to make late payments without invoking the Automatic Termination provision, WWR continued to develop and market the professional loudspeaker business using the Klipsch trademark, arguably greatly improving the value of that trademark. After years of developing Klipsch's name and after paying Klipsch over one million dollars for the right to develop its own business using the Klipsch name, Klipsch is essentially asking for the forfeiture of WWR's business. Without the use of the Klipsch trademark that WWR substantially developed, WWR will no longer have the use of a recognizable name in the loudspeaker business which is essential to its successful operation. In the final analysis, WWR spent three years developing a name which it now has no right to use. Effectively, WWR has given up considerable time, money, and effort in exchange for a loudspeaker business which is not worth much of anything without the use of the trademark under the

License Agreement. Because I do not believe these results are "consonant with notions of fairness and justice," id., as found by District Judge Harry F. Barnes in his opinion in this case, I would affirm the district court's decision based on the equitable forfeiture issue.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.