# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2623

_____

Marilyn Simmons,

        Plaintiff-Appellant,

v.

New Public School District No. Eight,

        Defendant-Appellee.

Appeal from the United States
District Court for the
District of North Dakota.

_____

Submitted:  March 16, 2001

Filed:  May 30, 2001

_____

Before MURPHY, LAY, and BYE, Circuit Judges.

_____

LAY, Circuit Judge.

Marilyn Simmons worked as an administrator for the New Public School District No. Eight (the District). She brought suit against the District alleging gender discrimination for (1) unequal pay, and (2) the non-renewal of her contract. The district court granted summary judgment to the District based upon res judicata and a lack of evidence supporting her claim. We reverse the district court's judgment and remand the case for further proceedings.

# I.  Background

Simmons worked as an administrator for the District from 1991 to 1996.  On April 20, 1996, after a lengthy hearing, the District voted not to renew her contract for the next school year.  Simmons sued the District in state court alleging various claims, including violations of her North Dakota statutory rights as an educator.  The state trial court rejected her claims.  On appeal, the North Dakota State Supreme Court reversed.  See Simmons v. New Public School Dist. No. Eight, 574 N.W.2d 561 (N.D. 1998).  On remand, the parties stipulated to an agreement to settle the claims.  The settlement, however, specifically gave Simmons the right to pursue the claims listed in the EEOC complaint she had filed against the District.

Simmons eventually received a "right to sue" letter from the EEOC, and filed this action in federal district court.  She initially alleged[1] that her contract was not renewed because of gender discrimination.  Before the district court, she pointed to statements by the District Board's President, Diana Harstad, who allegedly made statements to several witnesses such as "a woman can't handle [Simmons'] job" and Simmons was "a woman in a man's job."  Second, Simmons alleged she was paid less then men in similar positions.  She relied on evidence that a male contemporary received larger percentage raises than she received, and evidence that the males hired to replace her a year after she left made significantly more money.[2]

---

[1]Simmons' federal complaint alleged other causes of action that the district court dismissed and are not a part of this appeal.

[2]According to her evidence, the District was unable to fill Simmons' position for the school year after she left.  The District hired a male, Michael J. Norland, for the 1997-98 school year.  Norland made $60,000 for the 1997-98 school year.  Two years after Simmons left, the District hired another male to take over a portion of Simmons' work.  This individual was paid $46,500, beginning with the 1998-99 school year.  In Simmons' last year with the District (1995-96), she made $37,200.

The district court dismissed Simmons' claim in its entirety.  The court first ruled that her claims were barred by the doctrine of res judicata by reason of the settlement in the state case.   The court went further and dismissed Simmons' gender discrimination claims on the merits, holding that there was not sufficient evidence to support her claims.  We reverse.

## II.  Discussion

### A.  Res Judicata

Res judicata precludes the re-litigation of a claim on grounds that were raised or might have been raised in a prior action.  See Klipsch, Inc. v. WWR Technology, Inc., 127 F.3d 729, 733 (8th Cir. 1997).  While normally Simmons' EEOC complaint would be barred by the settlement in her first lawsuit, it is clear that the explicit reservation of her right to bring her EEOC claims allows this suit.  See Rugby Milling Co. v. Logosz, 261 N.W.2d 662, 664 (N.D. 1977); RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a) (allowing a second action when the parties to the first action "have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein.").  We therefore hold that the issues raised by Simmons in her EEOC complaint survive the preclusive effect of the prior settlement.

### B.  Gender Discrimination

#### 1.  Non-Renewal

We next turn to the question of whether there was sufficient evidence to allow a trial on Simmons' gender discrimination claims.  We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Simmons.  See Moore v. Payless Shoe Source, Inc., 139 F.3d 1210, 1211 (8th Cir. 1998).  To make a prima facie case of discrimination under Title VII, Simmons must

show (1) she is a member of a protected class; (2) she is qualified to receive the benefit in question; (3) she was denied that benefit; and (4) there exists some evidence that gives rise to an inference of gender discrimination. See Kindred v. Northome/Industrial School Dist. No. 363, 154 F.3d 801, 803 (8th Cir. 1998). On appeal, the defendant argues that no evidence giving rise to an inference of gender discrimination exists. Simmons argues that Harstad's comments provide sufficient evidence of gender discrimination to allow the case to go to trial. We agree. It appears to us that Harstad's statements provide direct evidence[3] of gender discrimination, which "meet[s] the fourth prong's minimal requirements of some evidence allowing for an inference of improper motivation." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995).

The District relies upon a line of cases that hold that an inference of gender discrimination is not supported by "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself" to argue that Harstad's statements do not provide sufficient evidence of discrimination. See Gartman v. Gencorp, Inc., 120 F.3d 127, 131 (8th Cir. 1997) (quotations omitted). However, Harstad was not only a decisionmaker, she was the President of the Board that made the decision not to renew Simmons' contract. Likewise, Harstad's statements were not mere stray remarks that "bore no relation to the decisional making process." Id. Rather, these statements, if true, were directly related to the decision making process and provide clear evidence that gender discrimination played a part in Simmons' dismissal.

---

[3]Since Harstad's statements provide direct evidence of gender discrimination, the burden shifting analysis from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is inapplicable. See Kneibert v. Thomson Newspapers, Michigan Inc., 129 F.3d 444, 451-52 (8th Cir. 1997).

Despite this direct evidence of gender discrimination, the District nevertheless believes summary judgment was appropriate. It points to several of Simmons' alleged job-related deficiencies that were brought up at her non-renewal hearing. It relies upon Harstad's testimony that she did not make some of the alleged statements and others were taken out of context. The District also argues that even if Harstad made those statements, there is no evidence that her dismissal was caused by Harstad's alleged bias: the Board's vote was 4-1 in favor of dismissal, so even if Harstad had voted in favor of renewal, Simmons' contract would not have been renewed. Finally, the District points to the Board members' affidavits that state that they were not influenced by Harstad's alleged gender bias.

Since there exists direct evidence of gender discrimination, however, this case is governed by the mixed-motive analysis from Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Since the plaintiff has provided "direct evidence that an illegitimate criterion . . . played a motivating part in the employment decision," the burden shifts to the employer to show that it would have reached the same employment decision absent any discrimination. Cronquist v. City of Minneapolis, 237 F.3d 920, 924 (8th Cir. 2001) (quotations omitted). All of the District's arguments listed above essentially amount to a contention that it would have fired Simmons notwithstanding any gender bias. However, those arguments are for a finder of fact, not for this court, to decide. It may well be that Simmons was fired for her job performance and that the other Board members were not affected by Harstad's bias. But Harstad's statements directly suggest that gender discrimination did play a role in Simmons' termination, and as Board President, it is not difficult to imagine that Harstad could have influenced other Board members to vote with her.

For these reasons, we believe that Harstad's alleged statements provide direct evidence that gender discrimination played a part in the Board's decision not to renew Simmons' contract. Summary judgment is therefore inappropriate.

*2. Equal Pay*

Although Simmons' EEOC complaint referenced both Title VII and the Equal Pay Act, her complaint listed only Title VII. However, when a plaintiff alleges that her employer provides "unequal pay for equal work on the basis of sex, the standards are the same whether the plaintiff proceeds under Title VII or the Equal Pay Act." Kindred, 154 F.3d at 803 (quotations omitted). In order for Simmons to succeed on her equal pay argument, she must show that the District "pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." Id. (quotations omitted). Simmons points to several male employees who received dissimilar pay: (1) Arthur Gutschmidt, a contemporaneous employee who was paid less money than Simmons, but received a greater percentage raise than she received, and (2) the two men who were hired to replace Simmons a year after she left.

To the extent that Simmons' claim relies upon the comparison with Gutschmidt, her claim fails. Simmons points out that Gutschmidt's salary increased at a higher percentage than hers for each school year from 1993-94 to 1995-96. While a higher percentage raise could, in appropriate circumstances, support a prima facie case of unequal pay, what Simmons fails to point out is that during her time with the District, the gap between the salaries actually increased in Simmons' favor. In 1991, Simmons' salary was $32,000, while Gutschmidt's salary was $30,000, a difference of $2,000. In 1996, Simmons' salary was $37,200, while Gutschmidt's salary was $34,100, a difference of $3,100. With this in mind, we believe that Simmons cannot rely upon a

comparison with Gutschmidt's salary to support her equal pay gender discrimination claim.[4]

More troublesome is the pay of the males hired to replace her. Simmons made $37,200 in the 1995-96 school year, while her replacement made $60,000 during the 1997-98 school year, and the additional male hired to help during the 1998-99 school year made $46,500. The District does not argue that the new supervisor had additional duties, or provide any legitimate nondiscriminatory reason for the discrepancy, but it does provide two arguments for rejecting the use of this comparison: (1) although Simmons raised an equal pay claim in her EEOC complaint, she did not specifically refer to the future employees, and (2) the year gap makes the comparison between salaries irrelevant.

The District's argument that Simmons should not be allowed to raise the issue of the pay of the subsequently hired employees because she did not include such a factual allegation in her EEOC complaint fails. To determine whether an allegedly discriminatory action falls within the scope of a claim, "the administrative complaint must be construed liberally." Stuart v. General Motors Corp., 217 F.3d 621, 631 (8th Cir. 2000) (quotations omitted). The rule in this circuit is that a plaintiff may seek relief "for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Id. (quotations omitted). Since the purpose of requiring plaintiff to first file a charge with the EEOC is to facilitate the EEOC's investigatory and conciliatory role, the sweep of the administrative charge is as "broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination." See Kells v. Sinclair Buick–GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir. 2000) (quotations omitted). We review district court decisions on this issue de novo. See id.

---

[4]Although we need not discuss it, we also note that Gutschmidt and Simmons did not do the same type of work.

Simmons' EEOC complaint alleged that she was not paid equally, relying specifically on the difference between Gutschmidt's and her 1996 pay raise. Nevertheless, had the EEOC investigated Simmons' complaint of unequal pay, it no doubt would have compared her salary to the salaries of other employees, including the pay of employees hired after she left the District. Thus, it is reasonable to assume that the salaries of the subsequently hired males would have grown out of the EEOC investigation into Simmons' allegation of unequal pay. We therefore believe that Simmons' EEOC complaint was broad enough to encompass a comparison with employees hired to replace her.

We also believe that the comparison with the subsequently hired employees allows Simmons' equal pay claim to survive summary judgment. Since there is no direct evidence that Simmons was paid less than her eventual replacement because of her gender, Simmons claim is governed by the familiar burden shifting analysis from McDonnell-Douglas. See Kindred, 154 F.3d at 803-04. Plaintiff has the burden of providing a prima facie case of discrimination. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981). This burden is "not onerous," and can be satisfied by showing "circumstances which give rise to an inference of unlawful discrimination." Id. at 253. Next, the defendant has the burden of articulating legitimate, nondiscriminatory reasons for the employment action. Id. Plaintiff then has the burden of showing that those reasons were mere pretext for discrimination. Id.

The district court believed that the salaries of the subsequent employees were not relevant to Simmons' prima facie burden due to the time lag, and on appeal, the District relies upon this argument instead of providing a legitimate, nondiscriminatory reason for the pay discrepancy. Thus, the only issue before us is whether Simmons' evidence satisfies her prima facie burden. In equal pay cases, a plaintiff can meet her prima facie burden by comparing her salary to that of her predecessor or successor. See Brinkley Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994); 29 C.F.R. § 1620.13(b)(2), (4) and (5). Further, this circuit has held that such inquiry need not

be limited to a comparison to an employee's immediate successor.  See Clymore v. Far-Mar-Co., Inc., 709 F.2d 499, 502 (8th Cir. 1983) ("[c]ourts have not held that the Equal Pay Act comparisons must stop with an immediate predecessor or successor as a matter of law.").  See also Taylor v. Philips Industries, Inc., 593 F.2d 783, 786 (7th Cir. 1979) (allowing comparison to "all" of female's successors, including non-immediate successors).  Such a comparison, however, is complicated by the fact that salaries are expected to rise as time goes by.  The more time that passes, the less relevance non-immediate successors' salaries have to a Title VII claim.

Nevertheless, we believe that Simmons' evidence raises a prima facie case of discrimination.  When Simmons began working for the District in 1991-92, she made $32,000.  When she finished in 1995-96, she made $37,200.[5]  That adds up to a raise of $5,200, or approximately $1,000 dollars a year.  The male hired to replace her made $60,000 during the 1997-98 school year, an increase of over $22,000 from the time Simmons left in 1996.  Again, while we would expect an increase, a $22,000 raise over two years when Simmons received raises of approximately $1,000 a year, combined with the discriminatory remarks of Harstad and the subsequent addition of the second male, raises the permissible inference that, because of her gender, Simmons was paid less than male employees for equal work.

We stress that an employer is free to give raises, even large raises, to subsequent employees, so long as it does so for legitimate nondiscriminatory reasons.  If the District had a legitimate reason for giving the raise, it has not made any such argument on appeal.  Given that plaintiff's prima facie burden is not onerous, and that "summary judgment should be used sparingly in employment discrimination cases," see Chock v. Northwest Airlines, Inc., 113 F.3d 861, 862 (8th Cir. 1997), we believe the large

---

[5]The District points to $800 Simmons received during her last year of employment to attend a high-risk conference, suggesting this money should be included in her pay.  Even if appropriate, the addition of this $800 does not alter our conclusion.

discrepancy in salary combined with Harstad's discriminatory remarks satisfies Simmons' prima facie burden under Title VII.

For these reasons, we reverse the district court's award of summary judgment against Simmons on her Title VII claim.

## III. Conclusion

For the reasons expressed above, we REVERSE the district court award of summary judgment in favor of the District and REMAND the case for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.