# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-2408

_____

Cloetta Brady

*Plaintiff - Appellant*

v.

Walmart Stores East I, LP; Walmart Stores East, LP

*Defendant*s

Walmart Stores, Inc.; Walmart, Inc.

*Defendants - Appellees*

WalMart #0017

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: June 10, 2025
Filed: July 21, 2025

_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Cloetta Brady, a former Walmart employee, sought and was denied a promotion. As relevant here, she brought a disparate treatment claim against Walmart Stores, Inc. and Walmart, Inc. (collectively "Walmart"), alleging sex discrimination for failure to promote, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* 42 U.S.C. § 2000e-2. The district court[1] granted summary judgment to Walmart. Brady appeals, and we affirm.

## I. Background

In 1987, Brady began her career with Walmart as a stocker and checker at a Walmart store located in Neosho, Missouri. Beginning in 1990, she served as a claims associate for the store, a position which she held until her employment with Walmart ended in 2008.

In June 2007, the Neosho store opened a position as a daytime support manager, and Brady was interested in applying. Another Walmart employee, Mike Harms, was also interested. Walmart required applicants for support manager positions to pass an aptitude test called the Supervisory Leadership Assessment ("SLA"). However, employees who had been serving in hourly supervisor positions, including as support managers, since before the introduction of the SLA in 2006 were not required to take the SLA to qualify. At the time, neither Brady nor Harms had passed the SLA, but Harms was serving as a nighttime support manager. Thus, Harms met this minimum qualification, but Brady did not. The hiring manager, Henry Wallace, selected Harms for the position in July 2007.

At the time, Charles Cornelison served as store manager of the Neosho Walmart. Brady testified that, after initially telling Cornelison about her interest in

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

the support manager position, he told her that he was not going to fill the position. She also testified that, around two weeks after Harms received the promotion, Cornelison explained that Harms was given the position "because he was sick" and "had a family to support."

Following these events, Brady joined a putative nationwide class action lawsuit against Walmart that alleged sex discrimination in pay and promotion in violation of Title VII. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The Supreme Court reversed the class certification for failure to satisfy Federal Rule of Civil Procedure 23(a)(2)'s commonality requirement. *Id.* at 359. The former *Dukes* class members were permitted to file charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and Brady timely filed hers. Years later, in 2021, the EEOC issued a right to sue letter. Brady sued Walmart in Missouri state court, and Walmart removed the action to federal court. Brady asserted several claims, most of which were dismissed. Walmart then sought summary judgment on Brady's remaining claims: disparate treatment in promotion, disparate impact in promotion, and discrimination in pay, all in violation of Title VII. The district court granted Walmart's motion for summary judgment. Brady appeals, challenging only the district court's grant of summary judgment on her claim of disparate treatment in promotion due to sex discrimination.

## II.  Discussion

We review the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party and affirming only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Huber v. Westar Foods, Inc.*, 139 F.4th 615, 620 (8th Cir. 2025) (en banc).  "[A] plaintiff may survive the defendant's motion for summary judgment" on a Title VII claim "in one of two ways." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc).  "The first is by proof of 'direct evidence' of discrimination," where the term "direct" "refers to the causal strength of the proof" proffered by the plaintiff.  *Id.*  "But if the plaintiff lacks

evidence that clearly points to the presence of an illegal motive," she can avoid summary judgment only "by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

## A. Direct Evidence of Discrimination

We first consider whether Brady presented direct evidence of employment discrimination. Direct evidence of employment discrimination "is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Towery v. Miss. Cnty. Ark. Econ. Opportunity Comm'n, Inc.*, 1 F.4th 570, 573 (8th Cir. 2021) (internal quotation marks omitted).

Brady asserts that Cornelison's remark that Harms was hired as the support manager "because he was sick" and "had a family to support" constitutes direct evidence of sex discrimination. According to Brady, the comment reflects sex stereotypes about men as breadwinners. We addressed a similar situation in *Torgerson*, where a female plaintiff alleged sex discrimination in hiring by the city's fire department, in violation of Title VII, where the fire commissioner commented to a city council member that his preferred candidate "was a big guy and that he'd make a good firefighter." 643 F.3d at 1036, 1045. The court contrasted that statement with statements that the court in earlier cases found to be direct evidence of sex discrimination. Such comments included: "a woman can't handle [the administrator's] job," *id.* at 1046 (alteration in original) (quoting *Simmons v. New Pub. Sch. Dist. No. Eight*, 251 F.3d 1210, 1213 (8th Cir. 2001)), and "women in sales were the worst thing to happen to the company," *id.* (internal quotation marks omitted) (quoting *Stacks v. Sw. Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1318 (8th Cir. 1994)). The court concluded that the fire commissioner's statement "is not direct evidence of discrimination" because it "does not relate to [the plaintiff], or to the

abilities of female applicants." *Id.* Accordingly, the court upheld a grant of summary judgment to the city-employer on that claim. *Id.* at 1036.

We conclude that Cornelison's statement does not constitute direct evidence of sex discrimination. "Direct evidence does not include statements by decisionmakers that are facially and contextually neutral." *Id.* at 1045;[2] *see also Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 974 (8th Cir. 2012) (holding that "neutral statements, without more, do not demonstrate animus on the part of the speaker"). Cornelison's comment that Harms "was sick" and "had a family to support" was facially and contextually neutral as to sex. On its face, the comment neither related to Brady nor "to the abilities of female applicants" to perform in the support manager role. *See Torgerson*, 643 F.3d at 1046. Further, Brady has not alleged any other facts from which a juror could conclude that Cornelison was motivated by sex discrimination. Indeed, in her own deposition testimony, Brady admitted that Cornelison never made any derogatory comments towards her regarding her sex or gender. Taken together, Brady has not established "a specific link between the alleged discriminatory animus and the challenged decision," and thus has not presented direct evidence of sex discrimination. *See Towery*, 1 F.4th at 573.

Brady contends that this conclusion conflicts with decisions from several other circuits, but we disagree. She first points to *Back v. Hastings On Hudson Union Free School District*, in which a school psychologist who was denied tenure and terminated alleged that, after she returned from maternity leave, her superior made multiple comments discouraging her from having more children and suggesting that her profession conflicted with her responsibilities as a mother. 365 F.3d 107, 113, 115 (2d Cir. 2004). The Second Circuit held that "stereotyping of

---

[2]Because we conclude that Cornelison's statements themselves do not constitute direct evidence of discrimination, we need not additionally decide whether he was a "decisionmaker" whose statements are even capable of constituting direct evidence of sex discrimination. *See Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 693 (8th Cir. 2021).

women as caregivers"—including through "stereotypical remarks about the incompatibility of motherhood and employment"—"can by itself and without more be evidence of an impermissible, sex-based motive." *Id.* at 122. Unlike in our case, the comments at issue in *Back* were facially non-neutral as to sex because they explicitly referenced the plaintiff's womanhood and motherhood. Our holding is not in tension with the Second Circuit.

Brady next cites *Costa v. Desert Palace, Inc.*, in which the Ninth Circuit held that a woman who was denied overtime work opportunities "because she did not have a family to support" had a colorable Title VII claim. 299 F.3d 838, 861 (9th Cir. 2002) (en banc), *aff'd*, 539 U.S. 90 (2003). The plaintiff was subject to "sexual language and epithets," including multiple occasions when her supervisor stated that he wanted to "get rid of that bitch" and comments such as "[y]ou got more balls than the guys." *Id.* (alteration in original). The plaintiff also received harsher discipline than her male counterparts. *Id.* at 845. Unlike in our case, the family support statement in *Costa* was contextually non-neutral as to sex in light of the extensive evidence that the plaintiff faced sex-based mistreatment. Brady, however, has not alleged any facts suggesting that Cornelison's family support remark was discriminatory in context. Our holding therefore does not conflict with the Ninth Circuit either.

Brady also argues that our conclusion conflicts with two Eleventh Circuit cases. In *Thompkins v. Morris Brown College*, a female college math teacher alleged that the school restricted her from maintaining additional employment even though male teachers were not similarly restricted. 752 F.2d 558, 559 (11th Cir. 1985). She claimed that a college administrator explained that "males had families and needs that [she] did not have." *Id.* at 561. However, this case is distinct from ours because the college administrator explicitly stated a view that men have more financial responsibilities than do women, and thus was facially non-neutral as to sex.

Finally, Brady points to *Taylor v. Runyon*, in which a female United States Postal Service worker was passed over for a promotion in favor of a male employee.

175 F.3d 861, 863-64 (11th Cir. 1999).  The plaintiff alleged that the decisionmaker explained to her that the male "was a married man with a wife and children to support" and that he "needed the money more" than she did.  *Id.* at 864, 866.  The court held that the plaintiff had a colorable Title VII claim.  *Id.* at 868.  This holding does not conflict with ours, however, because the Eleventh Circuit based its decision on the *McDonnell Douglas* framework.  *Id.* at 866-68 (concluding that a jury could disbelieve the Postal Service's proffered nondiscriminatory reasons for hiring the male).  The court did not hold that the statement at issue was sufficiently strong evidence of sex discrimination so as to obviate the need to apply the *McDonnell Douglas* framework.[3]  *See Torgerson*, 643 F.3d at 1044.  Our holding that Brady failed to present direct evidence of sex discrimination does not conflict with the Eleventh Circuit.

---

[3]While it is true that the Eleventh Circuit in *Taylor* suggested "that the type of statement at issue here constitutes direct evidence," *Taylor*, 175 F.3d at 867, it referred to "direct evidence" as the converse of circumstantial evidence.  *Id.* n.2.  In the context of a Title VII suit, however, "direct evidence" can also take on a meaning that "is not the converse of circumstantial evidence."  *Torgerson*, 643 F.3d at 1044.  Rather, the term "'direct' refers to the causal strength" of the proffered evidence of discrimination, such that when the evidence is sufficiently "direct," or strong, the plaintiff need not rely on the *McDonnell Douglas* framework to prevail at summary judgment.  *Id.*  This is the sense in which we use the term.  These distinct meanings can cause confusion in Title VII disputes because strong circumstantial evidence of discrimination is "direct" in one sense but not "direct" in another.  *See id.* at 1053 (Colloton, J., concurring) (noting that "confusion . . . has arisen from efforts to apply a 'direct evidence' standard" in the Title VII context); *see also Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1553, 1554-55 (2025) (Thomas, J., concurring) (explaining that "mak[ing] the often subtle and difficult distinction between 'direct' and 'indirect' or 'circumstantial' evidence" in the Title VII context "has created outsized judicial confusion").  Because *Taylor* used the term "direct evidence" in a different sense than we do here, our holdings do not conflict.  More concretely, our conclusion that Brady's proffered evidence was not sufficient to support a finding of sex discrimination without reliance on the *McDonnell Douglas* framework does not conflict with the Eleventh Circuit's suggestion in *Taylor* that the plaintiff's proffered evidence was not circumstantial evidence.

**B. Inference of Unlawful Discrimination**

We now consider whether Brady "creat[ed] the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *See Torgerson*, 643 F.3d at 1044. As a first step under the *McDonnell Douglas* framework, Brady must establish a *prima facie* case of discrimination. *See id.* at 1046. If she does so, the burden shifts to Walmart to articulate a legitimate, nondiscriminatory reason for hiring Harms instead of her. *See id.* Then, if Walmart meets its burden, the ultimate burden falls back on Brady "to produce evidence sufficient to create a genuine issue of material fact regarding whether [Walmart's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *See id.*

Brady cannot satisfy the first step of the *McDonnell Douglas* framework. To establish a *prima facie* case of sex discrimination in employment, Brady would have to establish that "(1) she was a member of a protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of discrimination." *Hester v. Dep't of Treasury*, 137 F.4th 684, 688 (8th Cir. 2025). Her *prima facie* case fails at the second prong, as she was not qualified for the support manager position. To be qualified for the support manager position, Walmart required applicants to have passed the SLA exam or to have been serving in an hourly supervisory position. Though Brady eventually passed the SLA in 2008, she had not yet passed the exam when the support manager position was opened and filled in 2007. She also was not already serving in an hourly supervisory role. Harms, who was already serving as a nighttime support manager, was qualified for the position.

Brady resists this conclusion, contending that she was more qualified than Harms, having worked at Walmart longer and taken and passed other Walmart exams. Even if true, it would not matter. The record is clear that the position to which she applied had specific qualifications that she did not meet. Having failed

to establish a *prima facie* case of sex discrimination in employment, Brady cannot create an inference of discrimination under the *McDonnell Douglas* framework.

Brady has neither presented direct evidence of sex discrimination nor has she "creat[ed] the requisite inference of unlawful discrimination." *See Torgerson*, 643 F.3d at 1044. Accordingly, the district court did not err in granting summary judgment to Walmart on the disparate treatment in promotion claim.

## III. Conclusion

We affirm the judgment of the district court.

_____